IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROSEMARY COURTNEY,

                 Plaintiff,                          OPINION AND ORDER

v.

                                                11-cv-176-wmc

CAROLYN COLVIN,
Acting Commissioner of Social Security,[1]

                 Defendant.

---

This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g).  Plaintiff Rosemary Courtney seeks reversal of the commissioner's decision, which found her ineligible for disability insurance benefits because she is not disabled.  Courtney contends that the administrative law judge (ALJ) erred when he rejected a functional capacity evaluation performed by an occupational therapist and the opinion of an examining physician.  Because there is substantial evidence in the record to support the decision and no reversible error, the court will affirm the Commissioner's decision and dismiss this case.

FACTS[2]

A.  Background and ALJ Decision

Rosemary Courtney was born on December 17, 1957, and completed the ninth grade. AR 12.  She had past relevant work as an electrical assembler.  AR 57.

---

[1]The court has revised the caption to reflect the fact that Carolyn Colvin replaced Michael Astrue as the Acting Commissioner of Social Security after this case was filed.

[2]The following facts are drawn from the administrative record (AR).

On March 13, 2007, Courtney filed an application for disability insurance benefits alleging disability as of July 10, 2006, because of neck and back injuries, bi-lateral carpal tunnel and nerve damage.  AR 51, 147.  After the local disability agency denied Courtney's application initially and upon reconsideration, she requested a hearing, which was held on June10, 2009, before Administrative Law Judge Kevin M. McCormick.  The ALJ heard testimony from Courtney, AR 570-83, and a neutral vocational expert, AR 592-606.

At the hearing, Courtney testified that she had not worked since July 10, 2006.  AR 13.  She testified that she had worked in Rice Lake putting chips on computer boards and had worked as a cashier and stock person in various convenience stores and gas stations.  AR 16-19, 25.  Courtney testified that she was unable to work because she has pinched nerves in her neck and in her left leg, as well as tingling in her hands.  AR 21.  She explained that her left leg is numb, and that her left leg and her right foot are "tingly."  Courtney estimated that she could sit 15-20 minutes at a time and could walk half a block.  AR 27.  She uses a cane, which was prescribed by Dr. Szmanda, a neurologist in Antigo.  AR 28.

Courtney lives in Missouri with her mother and was going to a free clinic there for treatment of her diabetes.  AR 23-24.  She testified that she had surgery for carpal tunnel syndrome on July 20, 2007, and received a settlement form Worker's Compensation as a result of that surgery.  AR 24-26.  She also testified that the surgery had not made it easier to use her hands and fingers.  AR 26.

On September 30, 2009, the ALJ issued a decision finding Courtney not disabled.  AR 12-32.  In reaching his conclusion, the ALJ performed the required five-step sequential

analysis.  *See* 20 C.F.R. § 404.1520.   Relying on the opinions of the medical expert and a state agency medical consultant, he found that Courtney had the severe impairments of arthritis in the lumbar spine, status post right carpal tunnel release, diabetes, hypertension, asthma and obesity, but that none of her impairments or a combination of impairments met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.  AR 53.

The ALJ found that Courtney retained the residual functional capacity to perform light work with the ability to alternate positions briefly for one to three minutes each hour but could not perform power gripping with her upper extremity.  The ALJ also found Courtney could occasionally climb, balance, kneel, crouch, crawl and stoop, but must avoid vibration with the right hand and more than occasional exposure to humidity, wetness, dust, fumes, odors, pulmonary irritants and extremes in cold and heat.  AR 53-54.  In making his findings, the ALJ gave significant weight to the opinion of the medical expert, a board certified internist, who had the opportunity to review the expanded record.  The ALJ also concluded that the state agency physician's opinion was consistent with that of the medical expert.  AR 55.  Further, he noted little evidence of any significant treatment for Courtney's claimed problems with pinched nerves in her left leg, arms and hands or with her back problem, even though she had access to a free medical clinic for the past year.  AR 55.

The ALJ's decision became the final decision of the commissioner on February 11, 2011, when the Appeals Council affirmed the decision of the ALJ.  AR 1-5.

B. Relevant Medical Evidence

Courtney was diagnosed with a cervical strain after an automobile accident in September 2003. AR 232, 255. She returned to work after the accident but complained of ongoing pain in her back, legs, and arms. AR 255, 282, 296. Laboratory tests revealed degenerative changes in her back. AR 217, 225, 227, 231.

Dr. William Frank performed carpal tunnel surgery on Courtney's right wrist in June 2006. AR 288. In November 2006, Dr. Frank noted that Courtney still had some bilateral weakness in grip strength and experienced discomfort with repetitive grasping, but concluded that she had no residual impairment in either wrist for purposes of worker's compensation. AR 303. Dr. Frank did conclude that Courtney would have difficulty with activities requiring repetitive grasping and fine manipulation, although she could perform such activities occasionally, and restricted her lifting to 10-15 pounds frequently and 15-20 pounds occasionally. AR 303.

Dr. Frank also performed release surgery on Courtney's left elbow. After the surgery in December 2006, Dr. Frank concluded that Courtney had regained full and unrestricted range of motion and her grip strength was symmetrical. He also advised that Courtney would do best in work activity that did not involve repetitive reaching, twisting and grasping with an outstretched arm. AR 317. Courtney returned to see Frank in April 2007. AR 323. On examination, her right hand and wrist retained intact strength and sensation with no motor weakness in the thumb. He recommended carpal tunnel release on her left wrist. AR 323. He also noted that her elbow surgery had resolved well and that the burning sensation

4

Courtney was experiencing "with aggressive physical activity" would resolve itself within a year. AR 323.

In November 2006, Courtney's neurologist referred her for a functional capacity evaluation. AR 299. Elizabeth Friske, an occupational therapist, performed the evaluation on November 13, 2006, and found that: "Overall test findings, in combination with clinical observations, suggest the presence of near full, though not entirely full, effort on Mrs. Courtney's behalf." She concluded that Courtney may be able to do more physically at times than she demonstrated during the testing and that this fact should be considered in making vocational decisions. AR 299. Friske also noted that her assessment of Courtney's ability to work was based only on Courtney's performance during the testing. As a result, she concluded that Courtney could (1) perform work at least at the sedentary to light exertion level; (2) walk a mile on a flat surface with one two-minute break; (3) reach, handle or climb stairs with occasional bending, crouching and kneeling; (4) lift 10 pounds and carry 15 pounds occasionally; (5) push and pull 20 pounds occasionally; (6) stand 22 minutes without rest; (7) sit for 90 minutes at a time or for 2 hours and 39 minutes total; and (8) not squat. AR 300.

In December 2006, Courtney saw Dr. Szmanda because of radiating neck and back pain. AR 316. Dr. Szmanda concluded that her degenerative facet disease of her lower back and cervical degenerative disease was unchanged. On examination, Courtney had numerous trigger points in her cervical spine. AR 316. Five months later, Courtney complained that her pain sometimes radiated into her arms and she had worsening numbness and tingling in

her hands.  AR 315.  In 2008, Dr. Szmanda wrote that Courtney had to use a cane for stability and to prevent falls because of degenerative disease in her lower back.  AR 406.

On March 4 2009, Dr. Ronald Zipper, an orthopedic surgeon, performed an independent medical exam of Courtney to determine whether she qualified for state medical assistance in Missouri.  AR 434-36.  The x-rays of Courtney's lumbar and cervical spine were within normal limits except for some bony irregularities at the top of her lower back.  On examination, Zipper noted that Courtney had (1) a waddled gait without her cane but that it improved when she used a cane, (2) muscle spasms and tender points in her spine and back, (3) normal range of motion in her shoulders, (4) unremarkable elbows and wrists, (5) full grip strength in both hands, and (6) full finger movement.  AR 433-34.  As a result, Dr. Zipper opined that Courtney's impairments would limit her to sedentary work with occasional grasping and pushing and pulling for six to 12 months.  AR 436.

C.  Consulting Physicians

On June 22, 2007, state agency physician Mina Khorshidi completed a physical residual functional capacity assessment for Courtney and listed diagnoses of carpal tunnel, back and neck pain, high blood pressure, diabetes and asthma.  AR 371.  Khorshidi found that Courtney could lift 20 pounds occasionally and 10 pounds frequently, stand or walk six hours in an eight-hour workday and sit six hours in an eight-hour workday, with occasional stooping, kneeling, crouching and crawling and limited reaching in all directions, including overhead.  AR 372-74.

On October 15, 2007, state agency physician Pat Chan completed a physical residual functional capacity assessment for Courtney listing diagnoses of lumbar radicular pain, cervical radicular pain, bilateral carpal tunnel syndrome and left tennis elbow.  AR 394. Chan found that Courtney could lift 20 pounds occasionally and 10 pounds frequently, stand or walk six hours in an eight-hour workday and sit six hours in an eight-hour workday, with limited fingering and feeling.  Chan noted that she could perform frequent movements with bilateral gross and fine dexterity, but could not use vibratory tools or perform constant wrist motions.  AR 395-96.

On May 18, 2009, shortly before the ALJ hearing in this case, Dr. Sami Nafoosi, a neutral medical expert, completed a medical source statement on Courtney's ability to do work-related activities.  He concluded that Courtney could frequently lift and carry up to 10 pounds and occasionally lift up to 20 pounds.  AR 407.  He also concluded that she could sit up to eight hours and stand or walk up to six hours in an eight hour day, but must alternate positions briefly for one to three minutes every hour.  Dr. Nafoosi indicated Courtney did not require the use of a cane to ambulate.  AR 408.  While he also found that Courtney could not power grip, Dr. Nafoosi stated that Courtney could occasionally climb stairs, ramps ladder or scaffolds, balance, stoop, kneel, crouch and crawl.  AR 408, 410. Finally, he concluded that Courtney would have to avoid humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme cold, extreme heat and any vibrations with her right hand.  AR 411.

Dr. Nafoosi also responded in written interrogatories that he (1) was an impartial medical expert; and (2) had reviewed the evidence in the record to support his opinions. He listed Courtney's impairments as disorder of lumbar spine, right sided carpal tunnel release, diabetes, hypertension and obesity. AR 414. He noted, however, that Courtney's spine disorder did not meet a listed impairment because there was no evidence of spinal nerve root irritation. AR 415.

## OPINION

### I. Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled: the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). Nevertheless, the court must conduct a "critical review of the evidence" before affirming the Commissioner's

8

decision. *Id.* If it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review," the Commissioner's decision cannot stand. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Thus, when denying benefits, the ALJ must build a logical and accurate bridge from the evidence to his conclusion. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Here, Courtney contends the ALJ erred in three different respects, each of which are addressed below.

## II.   Functional Capacity Evaluation

Courtney contends that the ALJ erred in failing to consider the opinion of Elizabeth Friske, an occupational therapist, who concluded that Courtney could perform sedentary to light work. The ALJ found Friske's opinion less persuasive because she was "not an acceptable medical source" and openly acknowledged that she may not have obtained an accurate representation of Courtney's functioning. The regulations provide that in order to establish whether a claimant has a medically determinable impairment, there must be evidence from "acceptable medical sources," which include licensed physicians, psychologists, optometrists and podiatrists and qualified speech-language pathologists, but does not mention an occupational therapist. 20 C.F.R. § 404.1523(a).

As Courtney argues, however, evidence from "other sources" such as therapists and nurse practitioners can establish the severity of the impairment and how it affects the claimant's ability to function. 20 C.F.R. § 404.1513(d). In particular, Social Security Ruling 06-03p states that:

With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists.   Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

The 06-03p Ruling goes on to explain that adjudicators should consider the same factors in weighing opinions from "other" medical sources that they use in weighing "acceptable" medical sources, including the length and frequency of the treatment relationship, the consistency of the opinion with other evidence, the source's specialty and the degree to which the source presents relevant evidence to support the opinion.  *Id.*; *Phillips v. Astrue*, 413 Fed. App. 878, 884 (7th Cir. 2010).  Therefore, an ALJ may not reject an occupational therapist's report *solely* because therapists are not considered acceptable medical sources.  *See Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004) (reports from other medical sources entitled to consideration).

Contrary to Courtney's assertion, however, the administrative records indicate that the ALJ did not discount Friske's opinion merely because she was not a traditional medical source, but rather provided another good reason for giving Friske's opinion little weight: Friske's own statements that Courtney may have been able to do more physically than she was able to observe at the evaluation held on a single day, November 13, 2006.  Indeed, Friske noted some inconsistencies with Courtney's physical effort during testing, as well as the fact that Courtney perceived her physical abilities to be less than those observed during

10

testing.  AR 56.  Friske also specifically noted that her opinions were necessarily limited to on what she observed to be Courtney's effort on the day of testing.  In other words, Friske was concerned that the functional capacity evaluation tested Courtney's performance, rather than her actual abilities.  Given that Friske herself took pains to note this caveat to her report, the court cannot fault the ALJ for doing the same.  As a result, the court concludes that the ALJ's decision was reasonable and supported by substantial evidence.

## III.   Dr. Zipper

Finally, Courtney contends that the ALJ erred in rejecting the opinion of Dr. Zipper, who examined Courtney once in 2009 to determine whether she qualified for state medical assistance.  Zipper concluded that Courtney was limited to sedentary work with occasional grasping, pushing and pulling.  In assessing social security disability claims, opinions from sources who have treated the plaintiff are generally entitled to more weight than non-treating sources; just as opinions from sources who have actually examined the plaintiff are entitled to more weight than opinions from non-examining sources.  20 C.F.R. § 404.1527(c)(1) and (2).  As a result, an ALJ "can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice."  *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).  The ALJ is also allowed to consider the source's medical specialty and expertise, supporting evidence in the record and consistency with the record as a whole and other explanations regarding the opinion.  *Haynes v. Barnhart*, 416 F. 3d 621, 630 (7th Cir. 2005).  When an

11

examining physician and a reviewing physician present conflicting opinions, the ALJ may decide whom to believe as long as substantial evidence supports the decision. *See Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001).

Here, the ALJ discounted Zipper's opinion because he had neither opportunity to examine Courtney, nor the benefit of reviewing the other medical reports in the record, with which his assessment of Courtney's functioning contrasted sharply. Instead, Zipper gave significant weight to the neutral medical expert and the state agency physician, who also did not examine Courtney. Unlike Zipper, the ALJ also did consider all of the various medical opinions and compared them to Courtney's treatment record, which he found conservative in comparison to Courtney's subjective complaints. AR 55. The ALJ specifically noted: (1) the lack of any significant treatment for Courtney's pinched nerves in her left leg, arms hands and back; (2) the relatively conservative treatment for her neck and back complaints; and (3) the lack of recent clinical evidence, even though Courtney had access to a free medical clinic during the year leading up to the hearing. AR 55-56. The ALJ also noted that Zipper's report was inexplicably more restrictive than Friske's functional capacity evaluation, even though Friske indicated that Courtney likely could do more than she demonstrated during the evaluation. AR 56. Because the ALJ explained his reasoning and adequately supported it with evidence in the record, he did not err in discounting Zipper's opinion.

ORDER

IT IS ORDERED that the decision of defendant Carolyn Colvin, Acting Commissioner of Social Security, is AFFIRMED and plaintiff Rosemary Courtney's appeal is DISMISSED.  The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 21st day of January, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

13